UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AITA SENE NDIAYE,

        Petitioner,        CASE NO. 17-10118
                                  HON. DENISE PAGE HOOD

v.

REBECCA ADDUCCI,

        Respondent.
_____/

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS [#1],
GRANTING MOTION FOR STATUS HEARING [#6],
GRANTING LEAVE TO FILE SECOND DECLARATION [#8],
MOOTING MOTION TO VACATE STAY OF REMOVAL [#9],
AND GRANTING MOTION FOR SUBSTITUTION OF COUNSEL [#11]**

**I.    BACKGROUND**

    **A.    Procedural Background**

On January 13, 2017, Petitioner Aita Sene Ndiaye ("Ndiaye") filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241. (Doc # 1) On January 17, 2017, the Court issued an Order Directing Service and Response and staying the removal of Ndiaye. (Doc # 2) On February 6, 2017, the Government filed a Response. (Doc # 4) On February 9, 2017, the Court entered a Stipulated Order vacating the stay of removal. (Doc # 5) On February 14, 2017, Ndiaye filed an Emergency Motion for an Expedited Status Hearing. (Doc # 6) On February 16, 2017, the Government filed an Ex Parte Motion for Leave to File Second

Declaration. (Doc # 8) The Court held a hearing on February 17, 2017. On February 17, 2017, the Government filed an Emergency Motion to Vacate Stay of Removal (Doc # 9), and Ndiaye filed a Response (Doc # 10). On February 20, 2017, Ndiaye filed a Motion for Substitution of Counsel. (Doc # 11)

The Court held another hearing on February 21, 2017 so that Ndiaye could be present via video conference. The Court set forth all the events surrounding the February 17th hearing. The Court informed Ndiaye of its decision to deny without prejudice her Petition. There being no objection, the Court also informed Ndiaye of its decision to grant her Motion for Substitution of Counsel. The Court further informed Ndiaye that if her removal does not take place by March 15, 2017, as expected, she may renew her Petition for a Writ of Habeas Corpus. Ndiaye raised a concern that her removal had been previously scheduled for June 20, 2016 for which she was flown to several locations in the United States but ultimately returned to Michigan. Ndiaye is concerned that this will happen again because she has not been shown her travel document. The Government agreed on the record to allow Ndiaye's new Counsel to view Ndiaye's redacted travel document pursuant to a protective order.

    B.    **Factual Background**

Ndiaye is a native and citizen of Senegal. (Doc # 1-1, Pg ID 12) On or about November 27, 2005, Ndiaye was paroled into the United States through

Detroit, Michigan until November 26, 2006.  (Doc # 1-2, Pg ID 15; Doc # 4-1, Pg ID 130)  On December 29, 2011, she was issued a Notice to Appear in immigration court for removal proceedings.  (Doc # 4-1, Pg ID 130)   On January 15, 2014, an immigration judge found that Ndiaye is an inadmissible alien under 8 U.S.C. § 1182, denied all requests for relief, and ordered Ndiaye removed to Senegal.  *Id.*  On August 21, 2014, Ndiaye was issued a final order of removal when the Board of Immigration Appeals dismissed her appeal.  *Id.*; Doc # 1-2, Pg ID 15.

On October 21, 2015, Ndiaye was enrolled in the U.S. Immigration and Customs Enforcement ("ICE") Alternatives to Detention Program and placed on an order of supervision.  (Doc # 4-1, Pg ID 130; Doc # 1-3)  Ndiaye complied with the order, appearing on at least ten occasions at the ICE Detroit Field Office as required.  (Doc # 1-4, Pg ID 20)  Ndiaye also agreed to comply with the ICE Intensive Supervision Appearance Program to monitor her movements with GPS technology.  (Doc # 1-5)  On January 14, 2016, Ndiaye filed a request to stay deportation in the ICE Detroit Field Office, requesting to remain in the United States until her son finished the school year.  (Doc # 4-1, Pg ID 130; Doc # 1-6, Pg ID 28)  ICE granted the stay of deportation on February 3, 2016.  (Doc # 4-1, Pg ID 130; Doc # 1-6, Pg ID 28)  The record indicates that Ndiaye's son, Amd Diouf, was a third grade student at Reach Academy in Roseville, Michigan at the time.

Amd, a U.S. citizen, had near perfect school attendance, exemplary grades in all subjects, and excellent behavior.  (Doc # 1-6, Pg ID 29)

On April 20, 2016, ICE rescinded the stay of deportation because Ndiaye failed to timely renew her Senegalese passport, which was to expire on May 5, 2016.  (Doc # 4-1, Pg ID 130; Doc # 1-7, Pg ID 49)  The following day ICE issued a Notice of Imminent Removal for Ndiaye.  (Doc # 4-1, Pg ID 130; Doc # 1-8, Pg ID 51)  On May 3, 2016, ICE attempted to remove Ndiaye without her son, ordering her to appear at the Detroit Metropolitan Airport.  (Doc # 4-1, Pg ID 131)  Ndiaye could not board the flight because she fell ill at the airport.  (Doc # 4-1, Pg ID 131; Doc # 1-9)  She was taken to the hospital where she complained of chest pains.  (Doc # 1-9)  A letter from her doctor, dated May 5, 2016, indicates that Ndiaye was recently diagnosed with "hypertension, 6th cranial nerve palsy and small hemangioma in brain" and requires medical attention on a monthly basis. (Doc # 1-10, Pg ID 68)

On May 6, 2016, Ndiaye again appeared at the ICE Detroit Field Office, at which time ICE imposed a curfew and indicated that Ndiaye could only leave her house for medical appointments and to transport her son to and from school.  (Doc # 1-4, Pg ID 20)  On May 9, 2016, Ndiaye was readmitted to the hospital.  (Doc # 1-11)  She was discharged on May 11, 2016 and diagnosed with "cavernous hemangioma and internuclear opthalmoplegia."  (Doc # 1-12)  Ndiaye continued to

4

appear at the ICE Detroit Field Officer as required, and she was taken into ICE custody on June 9, 2016. Ndiaye was included on an ICE charter mission to Senegal scheduled to depart on June 20, 2016, on which date Senegal declined to accept the 21 deportees. (Doc # 4-1, Pg ID 131)

Ndiaye has been in ICE custody for approximately eight months. She has requested to be released on supervision, including presenting a letter from U.S. Representative Sander Levin on her behalf, to no avail. (Doc # 1-14; Doc # 1-15) On December 12, 2016, Ndiaye was served with a Decision to Continue Detention. (Doc # 1-2, Pg ID 15) The letter informed Ndiaye that ICE was working on obtaining a travel document for her removal and that one was expected. *Id.* On February 3, 2017, ICE received a travel document for Ndiaye. (Doc # 4-1, Pg ID 131) ICE is currently working on scheduling her departure, and she is expected to depart the United States by March 15, 2017. *Id.*; Doc # 8-1, Pg ID 145.

According to a declaration of Vernon Liggins, ICE Deportation Officer,

> [b]etween July and December 2016, Senegal's Consul General issued six travel documents for aliens awaiting removal to Senegal. ICE successfully removed three of the six between August and December 2016. Two refused to board commercial aircraft and one reopened her immigration proceedings. On January 26, 2017, ICE received 55 travel documents from the Consul General . . . . On February 3, 2017, ICE received another batch of travel documents from Senegal . . . .

*Id.*

5

Ndiaye asserts, and the Government does not dispute, that she has no criminal history and that she is not a flight risk. If released on an order of supervision, Ndiaye would live with her father, a Lawful Permanent Resident, and her 10-year-old son, a U.S. citizen. (Doc # 1-1, Pg ID 12-13) Ndiaye further asserts that her medical conditions are exacerbated by prolonged detention.

## II.  ANALYSIS

Ndiaye seeks release from ICE custody under supervision via the instant petition for a writ of habeas corpus filed under 28 U.S.C. § 2241. She argues that her detention is unconstitutional because it has been indefinitely extended beyond the detention period authorized by 8 U.S.C. § 1231(a)(6) of the Immigration and Nationality Act.

Federal courts have jurisdiction to consider challenges to the lawfulness of immigration-related detention in habeas proceedings. *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001). A district court has the power to grant a writ of habeas corpus in accordance with 28 U.S.C. § 2241, which provides in pertinent part:

> (a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. . . . (c) The writ of habeas corpus shall not extend to a prisoner unless-- (1) He is in custody under or by color of the authority of the United States or is committed for trial before some court thereof . . . .

28 U.S.C. § 2241.

Congress has directed that after entry of a final order of removal, "the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). "During the removal period, the Attorney General shall detain the alien." *Id.* at § 1231(a)(2). Congress has further authorized the Attorney General to detain the alien beyond the 90-day removal period under certain circumstances:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorny General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

*Id.* at § 1231(a)(6).

Detention of an alien, however, may not be indefinite. *Zadvydas*, 533 U.S. at 688. If removal of the alien is not reasonably foreseeable, then continued detention of the alien is unreasonable and not authorized by the statute. *Id.* at 699-700. Detention for a period of up to six months is considered presumptively reasonable. *Id.* at 701. As the Supreme Court has explained,

> [a]fter this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been

> determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.* at 701.

> Courts have found no significant likelihood of removal in five types of cases: (1) where the detainee is stateless and no country will accept him; (2) where the detainee's country of origin refuses to issue a travel document; (3) where there is no repatriation agreement between the detainee's native country and the United States; (4) where political conditions in the country of origin render removal virtually impossible; and (5) where a foreign country's delay in issuing travel documents is so extraordinarily long that the delay itself warrants an inference that the documents will likely never issue.

*Ahmed v. Brott*, No. CIV. 14-5000, 2015 WL 1542131, at *4 (D. Minn. Mar. 17, 2015), *report and recommendation adopted*, No. CIV. 14-5000, 2015 WL 1542155 (D. Minn. Apr. 7, 2015) (collecting cases).

In this case, it is undisputed that Ndiaye has been detained under 8 U.S.C. § 1231(a)(6) since June 9, 2016 for longer that the six-month presumptively reasonable period under *Zadvydas*. The Government argues that, nevertheless, Ndiaye's detention has not exceeded a period reasonably necessary to secure her removal, and that this case does not fall into any of the aforementioned five types of cases in which courts have found otherwise.

The Court finds that Ndiaye has not shown that there is no significant likelihood that she will be removed in the reasonably foreseeable future. She is not stateless, Senegal recently issued a travel document for her, there is no indication in the record that political conditions in Senegal render removal impossible, and

8

the United States has removed individuals to Senegal in the recent past. The documentary evidence submitted by the Government indicates that ICE is in the process of scheduling Ndiaye's removal, which is expected to occur by March 15, 2017. The Court notes that if Ndiaye is not removed by March 15, 2017, she may be able to make a showing that there is good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. For now, however, the Court denies Ndiaye's Petition for a Writ of Habeas Corpus.

### III. CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED that Petitioner's Petition for a Writ of Habeas Corpus (Doc # 1) is DENIED.

IT IS FURTHER ORDERED that this action is DISMISSED WITHOUT PREJUDICE.

The Court having held a status hearing,

IT IS FURTHER ORDERED that Petitioner's Emergency Motion for an Expedited Status Hearing (Doc # 6) is GRANTED.

IT IS FURTHER ORDERED that the Government's Ex Parte Motion for Leave to File Second Declaration (Doc # 8) is GRANTED.

IT IS FURTHER ORDERD the Government's Emergency Motion to Vacate Stay of Removal (Doc # 9) is MOOT. The Stipulated Order vacating the stay of removal remains in effect.

IT IS FURTHER ORDERED that Petitioner's Motion for Substitution of Counsel (Doc # 11) is GRANTED.

S/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated: February 22, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 22, 2017, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager